UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SIDE BY SIDE REDEVELOPMENT,                    CIVIL ACTION
INC.

VERSUS                                         NO: 09-3860

CITY OF NEW ORLEANS                            SECTION: "A" (3)

### ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 51)** filed by defendant the City of New Orleans and a **Motion for Partial Summary Judgment Re: Liability and Undisputed Damages (Rec. Doc. 62)** filed by plaintiff Side by Side Redevelopment, Inc. Both motions are opposed. Both motions are before the Court on the briefs without oral argument. For the reasons that follow, the City's motion is GRANTED and Plaintiff's motion is DENIED.

### I.   FACTUAL BACKGROUND

In November 2003, plaintiff Side by Side Redevelopment, Inc. ("SBS" or "Plaintiff") bid to buy a number of properties at a tax sale conducted by the City of New Orleans. Two of the properties it bid on were 2231-33 Milan Street and 2237 Milan Street. The City issued SBS a Tax Sale Deed on the 2237 property (Rec. Doc. 51, Exh. A). SBS initially thought that it had purchased the property at 2231 Milan but the Tax Sale Deed referenced the 2237 property. On April 2, 2004, SBS obtained an order of possession

1

for the 2237 property named in the Tax Sale Deed (Rec. Doc. 39, Exh. 7).  As explained in more detail below, the Tax Sale Deed contained an incorrect street address—SBS never actually purchased the 2237 property.  Instead, the property had been sold to Checker, LLC.

On December 7, 2006, Ms. Lorena P. Caldarera redeemed the 2237 property from Checker, LLC—the entity that had actually purchased the 2237 property at the tax sale.  (Rec. Doc. 51, Exh. C).  On March 21, 2007, SBS learned that it was not the tax sale purchaser of the 2237 property.  (Rec. Doc. 47-2 at 4).  SBS made this discovery when the Caldarera family sued SBS to redeem the property located at 2231-33 Milan.  (See note 1 infra).

On July 25-27, 2007, the City published notices in The Times-Picayune local newspaper giving official notification that it intended to demolish the property located at 2237 Milan Street because it was in imminent danger of collapse.  (Rec. Doc. 51, Exh. K).  On August 6, 2007, the City sent a letter to Lorena P. Caldarera giving her official notice, as owner of the 2237 property, that the City intended to demolish the property.  (Rec. Doc. 51, Exh. J).  On November 26, 2007, the 2237 property was once again sold at a tax sale, this time to Crescent City Property Redevelopment Services, Inc.

In January of 2008, SBS contacted the City to express its desire that the 2237 property not be demolished.  SBS obtained an

engineer's report opining that the 2237 property was not in imminent danger of collapse.  On January 28, 2008, city personnel advised counsel for SBS that the 2237 Milan Street had been removed from the demolition list.  (Rec. Doc. 39-10, Exh. 11). On January 31, 2008, Ms. Caldarera once again redeemed the 2237 property.  (Rec. Doc. 51, Exh. D).

On May 23, 2008, the City inspector prepared a memo stating that the 2237 property was in immediate danger of collapse. (Rec. Doc. 51, Exh. F).  SBS complains that it received no formal or informal notice of this memorandum and that if it had it would have taken immediate action, including perhaps seeking injunctive relief to prevent demolition.

On March 27, 2008, an Act of Correction of Tax Sale Deed was recorded in the Notarial Archives of Orleans Parish to correct the address listed in SBS's deed.  (Rec. Doc. 51, Exh. B).  The document indicates that 2237 was the incorrect address and the correct address should have been 2231-33, which is the property that SBS originally believed that it had purchased.[1]  The Act of Correction was filed pursuant to La. R.S. § 35:2.1(B) such that

---

[1] The same family that owned the 2237 property also owned the 2231-33 property.  The owner redeemed the 2231-33 property from SBS before the tax sale became final but it had to seek court intervention to do so.  According to the reasons for judgment, SBS demanded payment of items to which it was not legally entitled. (Rec. Doc. 51, Exh. E).  As part of the judgment, SBS was enjoined from exercising any claim with respect to the 2231-33 property. (Id.).

3

it was to have retroactive effect to the date that the original Tax Sale Deed was recorded.  (Rec. Doc. 36, Exh. 2).

On June 11, 2008, SBS's counsel spoke with the City Attorney's Office about the 2237 property and SBS forwarded a copy of its own engineer's report.  SBS complains that the deputy city attorney did not explain that the report would be insufficient to stop the demolition and she did not convey that the demolition would actually take place the next day.[2]

On June 12, 2008, the City demolished the improvements located at the 2237 property, contending that the property was in imminent danger of collapse.  SBS points out that the 2237 property remained on the City's "Do Not Demolish List" as of July 1, 2008.  SBS complains that the City's Director of Code Enforcement, to whom SBS's counsel sent an email on the day of the demolition, knows Dr. Alden[3] and SBS's counsel personally yet SBS was given no formal notice of the impending demolition.

II.   **PROCEDURAL BACKGROUND**

SBS filed this action against the City of New Orleans for damages that it claims to have sustained when the City wrongfully demolished the "improvements" located at 2237 Milan Street.  SBS

---

[2] It is not clear to the Court whether the deputy city attorney actually knew that the property would be demolished the next day.

[3] SBS is a non-profit corporation and W. Wesley Alden, M.D. is its director.  (Rec. Doc. 47-4).

4

claims that it intended to renovate the property, that the City gave it no notice of the imminent demolition, and that the City demolished the property unnecessarily.  SBS seeks damages, including the value of the improvements demolished, the costs of replacing the demolished structures, past, present, and future lost rental income, and attorney's fees.  Plaintiff relies on theories of federal due process and inverse condemnation under state law.[4]

SBS and the City previously moved for summary judgment, SBS seeking partial summary judgment as to the City's liability, and the City seeking judgment as a matter of law as to all of SBS's claims.  The Court denied both motions while expressly stating that it would consider a reurged motion for summary judgment filed by the City.  (Rec. Doc. 46).  In particular, the Court expressed concerns with SBS's standing to bring this lawsuit given that it never had an ownership interest in the 2237 property.  The Court also found troubling the lack of evidence that SBS had obtained *the right to possess* the 2237 property, a status distinct from mere civil possession under Louisiana law. (Id.).  SBS had made conclusory assertions in its motion regarding actual possession but it had offered no evidence.  The

---

[4] SBS has clarified that the takings/inverse condemnation claim is actually presented in the alternative if SBS cannot prevail on its constitutional due process claim.  (Rec. Doc. 39-3 at 12).

City had raised other arguments in its motion for summary judgment but the Court viewed standing as a threshold issue and pretermitted consideration of any of the City's other arguments.[5] (Id. at 3 n.3).

The City now reurges summary judgment on SBS's claims arguing that SBS lacks standing to bring this suit because it never had right, title, or interest to the 2237 property at any time.  The City contends that the rights of a tax sale purchaser are always inchoate during the redemption period because property is subject to redemption by the real owner.  The City contends that any possession that SBS had of the 2237 property terminated when the Caldarera family redeemed the property.[6]

_____

[5] SBS moved for reconsideration of the order denying its motion for summary judgment and the Court likewise denied that motion.  (Rec. Doc. 53).  The motion for reconsideration was clearly an attempt by SBS to address the Court's concerns over whether SBS had the right to possess the 2237 property, and to bolster its position as to standing.  The Court is persuaded that at best SBS's evidence creates a fact issue as to whether SBS maintained possession of the property, and it certainly does not rise to the level of entitling SBS to judgment as a matter of law on its claims.  Furthermore, the Court's prior ruling does not suggest that the Court was inclined to grant SBS's motion for summary judgment but for the question of whether SBS had the right to possess the 2237 property.

[6] The City also argues that the 2237 property was in immediate danger of collapse and therefore eligible for immediate demolition without notice pursuant to Section 26-166 of the Code of New Orleans.  The question of whether the building was in imminent danger of collapse is one of fact that the Court cannot decide on summary judgment for either party.  Naturally, a city ordinance cannot trump constitutional requirements of due process, see Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983), but failure to provide notice may not violate due process when issues of public safety require emergency action, Bd. of Regents

Plaintiff moves for summary judgment arguing that the city is liable for a due process violation and that its damages are the same as if it had owned the property.[7]

Regarding the taking/inverse condemnation claim, the City argues that this claim is not ripe for review because SBS has not been denied just compensation in state court.

This matter is scheduled to be tried to a jury on November 8, 2010.

**III. <u>DISCUSSION</u>**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." <u>TIG Ins. Co. v. Sedgwick James</u>, 276 F.3d 754, 759 (5th Cir. 2002) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

_____

<u>of State Colleges v. Roth</u>, 408 U.S. 564, 570 n.7 (1972).  Because the Court is persuaded that the issues of imminent danger and exigency are for the trier of fact, Plaintiff would not be entitled to judgment as a matter of law even it the City's motion were denied.

[7] This is Plaintiff's third attempt to obtain judgment as a matter of law.  (Rec. Docs. 39, 47, and 62).  Plaintiff had also hoped to prevail on its claims via default judgment.  (Rec. Doc. 31-Motion for Clarification/Reconsideration on Order Setting Aside Default).

Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### A.   Federal Due Process Claims

SBS contends that it acquired the right to possess the 2237 property and as a possessor it was entitled to notice before the City demolished the 2237 property.  SBS argues that the City's failure to provide it with formal notice of the demolition constituted a violation of its due process rights.

To bring a procedural due process claim under § 1983[8] a

---

[8] The City is the sole defendant in this lawsuit. Municipalities are not liable under § 1983 for constitutional violations committed by their employees unless those violations result directly from a municipal custom or policy.  Hinojosa v. Butler, 547 F.3d 285, 296 (5th Cir. 2008) (citing Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658 (1978)).  Municipalities can also be liable for failing to adequately train and supervise

plaintiff must first identify a protected life, liberty, or property interest and then prove that governmental action resulted in a deprivation of that interest.  Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001) (citing San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 700 (5th Cir. 1991)).  A threshold issue in any procedural due process claim is whether the right at issue is one protected by the Fourteenth Amendment because the right to a pre-deprivation hearing attaches only to rights encompassed within its  ambit.  Fuentes v. Shevin, 407 U.S. 67, 84 (1972); see Baldwin, 250 F.3d at 947.  Whether the interest is one within the Fourteenth Amendment's protection of liberty and property will depend on the nature of the interest at stake.  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  Property interests are created and their limits are defined by state law--not the Constitution.  Id.

In Mennonite Board of Missions v. Adams, the Supreme Court held that a mortgagee's due process rights were violated when the county sold property at a tax sale free and clear of the mortgage without providing notice to the mortgagee.  462 U.S. 791, 800 (1983).  Looking to state law, the Court noted that the mortgagee

---

their employees.  Id. (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  SBS alleges that the City has a custom or policy of failing to notify those with legally protected interests in property of plans to demolish that property, and that it has failed to adequately train and supervise its employees regarding due process requirements.

possessed a substantial property interest that was significantly affected by the tax sale. Id. at 798. Because state law confers on a mortgagee a legally protected property interest he is entitled to notice reasonably calculated to apprise him of a pending tax sale. Id. If the mortgagee is reasonably identifiable in a publicly recorded mortgage, he is entitled to notice mailed to him at his last known address or by personal service. Id. In Mennonite, the county had provided only constructive notice via publications that had not reached the mortgagee. Given that the mortgagee could likely have been identified via the public records, the constructive notice used by the county did not comport with due process. Id. at 800.

Mennonite does not, however, hold that due process requires or guarantees actual notice to every party with a publicly recorded interest in the subject property. See Mennonite, 462 U.S. at 798 n.4 ("We do not suggest, however, that a governmental body is required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record."); Davis Oil Co. v. Mills, 873 F.2d 774, 790 (5th Cir. 1989). As the Fifth Circuit explained in Davis Oil, the state is required only to undertake "reasonably diligent efforts" to identify and provide notice to parties having an interest in the subject property. 873 F.2d at 788. The reasonableness of notice in a particular case may turn on the

10

nature of the property interest at stake and the relative ease or difficulty of identifying potential interest holders from land records.  Id. at 790.

It is undisputed that SBS never owned the 2237 Milan Street property, whether as a conditional tax sale purchaser or otherwise.  The specific property right at issue in this case is possession.  Under Louisiana law, possession is the detention or enjoyment of a corporeal thing that one holds or exercises by himself or by another who keeps or exercises it in his name.  La. Civ. Code art. 3421.  To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. La. Civ. Code art. 3424.  Possession is a matter of fact but one who possesses a thing for over a year acquires the right to possess it.  La. Civ. Code art. 3422.  Thus, Louisiana law distinguishes between possession, which is the exercise of factual authority over a thing, and the right to possess, which one may acquire by exercising such authority for over a year. Id. cmt. (b).

The ownership and the possession of a thing are distinct. La. Civ. Code art. 481.  Unlike ownership and its dismemberments (usufruct, mineral leases, certain servitudes, etc.) possession is not a real right.  A.N. Yiannopoulos, Possession, 51 La. L. Rev. 523, 533 (1991).  Nonetheless, Louisiana law attaches significant legal consequences to possession.  Id.  One who has

acquired the right to possess has standing to institute a possessory action to be maintained in his possession when disturbed or restored to possession once evicted.  La. Code Civ. Pro. arts. 3655, 3658.  One who possesses immovable property may eventually acquire ownership of it through acquisitive prescription.  La. Civ. Code arts. 3475 (10 years in good faith), 3486 (thirty years).

Notwithstanding the significant legal rights that *may potentially* accrue with possession,[9] the concept of possession is designed as a first step in protecting ownership, whether acquired by acquisitive prescription, title, or otherwise.  Todd v. State of Louisiana, 474 So. 2d 430, 432 (La. 1985).   The real actions that are available to protect possession and the presumption of ownership inherent in possession promote peace and stability when disputes arise as to ownership of property.  Id. The legislative reasoning inherent in this approach is that in most cases those in possession of land are the owners, not squatters attempting to acquire ownership through acquisitive prescription.  Id.

But the fact that possession may lead to ownership does not mean that the availability of ownership is a sine qua non of possession.  Todd, 474 So. 2d at 433 (quoting Todd v. State of

---

[9] A possessor's rights are often determined by whether the possessor was in good or bad faith.  See, e.g., La. Civ. Code arts. 487, 3480.

12

<u>Louisiana</u>, 456 So. 2d 1340, 1349 (La. 1984) (original hearing)).
Possession can have with it its own attendant benefits some of
which include present authority to detain and enjoy until adverse
ownership is proven, transfer for value, ownership of fruits
gathered and works built on the property, and reimbursement for
certain expenses.  <u>Todd v. State of Louisiana</u>, 474 So. 2d 430,
433 (La. 1985) (<u>citing</u> <u>Todd</u>, 556 So. 2d at 1360 (Dennis, J.,
dissenting on rehearing)).

     The broad question presented by the parties' cross motions
is whether the City is liable for violating Plaintiff's due
process rights in conjunction with the demolition of the 2237
property.  This presents the narrower question of whether
principles of procedural due process required that the City
notify SBS that it intended to demolish the 2237 property.  And
implicit in this narrower question is the purely legal issue of
whether the nature of possession, whose contours are defined by
state law, is a protected property right within the Fourteenth
Amendment.  The Court has found no case to address whether the
possessor of real property, as that term is used in Louisiana,
has a right to notice of an imminent demolition in accordance
with <u>Mennonite</u>, <u>supra</u>.

     As explained above, possession is not a dismemberment of
ownership, it is not a real right, and it is by no means a vested
property right.  But as the Louisiana Supreme Court explained in

Todd[10], supra, and as the pertinent Civil Codes articles implicitly suggest, significant legal rights can attach with possession.  And this is true, whether the plaintiff has the right to possess or merely possesses factually.  One can acquire possession whether he does so via a title or simply via a trespass.  Possession is not so easily dismissed or ignored as a property right for purposes of due process.  The Court is persuaded that it would be legal error to conclude as a matter of law that possessors under Louisiana law are *never* entitled to procedural due process.  Thus, the Court cannot agree with the City's contention that Plaintiff lacks standing to bring a procedural due process claim simply because it did not own the property.[11]

But the inquiry does not end with the conclusion that possession may be subject to Fourteenth Amendment protections.

---

[10] The Todd decision demonstrates how difficult it can be to harness the concept of possession under Louisiana law.  Todd was decided by the Louisiana Supreme Court three times--first on original hearing, then reversed on rehearing, and then reversed again on rehearing.  All versions of the opinion attempted to definitively explain the contours of possession and ultimately the seven justices on the court at the time failed to agree on the concept.

[11] In Fuentes v. Shevin, the Supreme Court held that the right to a pre-deprivation hearing attached to consumers who had in their possession movables for which they lacked full title.  407 U.S. at 84.  Thus, Fuentes lends support for the proposition that under certain circumstances possession will trigger due process requirements.  Of course, the determination as to what process is due cannot be made without resort to state law and in this case Louisiana law defines possession in great detail.

14

Both the Supreme Court's <u>Mennonite</u> decision and the Fifth
Circuit's <u>Davis Oil</u> decision recognize that due process is not
violated every time a municipality fails to give notice to a
party with a publicly recorded interest in property.  Instead,
the Court does a reasonableness determination by looking to the
nature of the property interest involved and how easily
identifiable property interest holders might be.  Due process
does not impose an *absolute* requirement of notice.

By its nature, possession is a property right whose
existence is not easily ascertained.  Possession is a question of
fact that exists independently of public recordation, and the
right to possess arises by operation of law by possessing for
over a year, again solely independent of recordation in the
public records.  Possession does not exist simply because a party
claims to have it because numerous Civil Code articles govern
possession.  To have legal effect possession encompasses
subjective elements of intent as well as objective elements of
fact, La. Civ. Code art. 3424, it requires corporeal possession
which is an often disputed fact-driven determination, La. Civ.
Code art. 3425, it has spatial limits, La. Civ. Code art. 3426,
it must be free of vices, La. Civ. Code art.3435, and it cannot
be precarious, La. Civ. Code art. 3437.  Thus, while possession
cannot be dismissed outright insofar as the Fourteenth Amendment
is concerned, given the fact-intensive nature of the right, the

15

reasonableness of the municipality's conduct must be evaluated on a case by case basis.[12]

In this case, the public records did not unequivocally establish Plaintiff's possessory rights in the 2237 property at the time of demolition.  SBS claims to have recorded the order of possession rendered on April 2, 2004,[13] but that order of possession was based solely on the erroneous tax sale deed.  On March 27, 2008, the Act of Correction was publicly recorded such that the erroneous tax sale deed, which was the sole basis for the order of possession, was retroactively amended.  And of course the Act of Correction aside, a mere order of possession would not necessarily suggest that a party has taken the corporeal possession that the law requires in order to obtain possession.  Further, by the time that the demolition occurred the true owner of the property had already obtained a TRO against Plaintiff thereby ousting it of possession, at least

---

[12] Possession is not unlike ownership attained via thirty year acquisitive prescription in that the public registry may not reflect the property right.  Via acquisitive prescription a party could very well own property in full yet such ownership is not reflected in the public records.  In such a situation the owner of property may very well not be entitled to <u>Mennonite</u> notice in a demolition situation because his property interest is not publicly recorded.

[13] The Court pointed out in its prior Order and Reasons that the record does not contain actual evidence of recordation.  To date, Plaintiff has not produced evidence that the order of possession was in fact properly recorded prior to the demolition.

temporarily.[14]

In support of Plaintiff's contention that it had possessory
rights with respect to the 2237 property, Plaintiff attests that
it gutted the property after Hurricane Katrina and obtained a
building permit to do so.  (8/30/10 Alden dec. ¶ 4; 1-31-08 Alden
affid. ¶ 12).  Dr. Alden stated in his 2008 affidavit for the
state court proceedings that SBS took actions to clean and secure
the property at 2237 Milan, secured doors and windows, placed a
padlock on one rear door, and generally maintained the yard.  (1-
31-08 Alden affid. ¶ 11).  It is unclear whether these were
ongoing acts and it appears that little else had been done
because of the TRO that the owner obtained against SBS disturbing
its possession.  (Id. ¶ 18).  Plaintiff asserts that it spent
about $20,000 on the property.

Based on the foregoing factual allegations, the Court will
assume that Plaintiff had possession of the 2237 property when
the demolition occurred.[15]  And even though possession is a right
acquired by operation of law that may very well go undetected in
the public registry, the record in this case contains sufficient

---

[14] Once evicted, the right to possess is lost unless
possession is recovered within one year of the eviction.  La. Civ.
Code art. 3434.  According to Plaintiff, once preliminary
injunctive relief was denied it was left in possession of the
property.

[15] Again, Plaintiff's protestations to the contrary, this
issue is not undisputedly clear particularly in light of the TRO
that had been issued against Plaintiff even though a preliminary
injunction was later denied.  See note 5 supra.

17

evidence to entitle Plaintiff to the presumption that the City knew or at least should have known that Plaintiff might have the right to possession.  Nonetheless the Court is persuaded that the City is not liable under § 1983 for violating Plaintiff's due process rights.

The purpose of damages in a § 1983 suit is to compensate persons for injuries that are caused by the deprivation of constitutional rights.  Woodard v. Andrus, 649 F. Supp. 2d 496, 506 (W.D. La. 2009) (citing Memphis Comm. Sch. Dist. V. Stachura, 477 U.S. 299, 307 (U.S. 1986)).  To that end, no compensatory damages are owed in a civil rights suit absent proof of actual injury.  Id. (quoting Farrar v. Hobby, 506 U.S. 103, 112 (1992)).  This proof has two components:  proof of an injury and proof of a causal link between the defendant's unlawful conduct and the injury.  Id.  In the instant case, the specific injury that Plaintiff is claiming is wholly speculative and one for which it lacks standing to claim, and to the extent that Plaintiff was injured, there is no causal link between that injury and the lack of Mennonite notice.

First, the injury or damage that Plaintiff alleges in this case is the value of the improvements demolished, the costs of replacing the demolished structures, past, present, and future lost rental income.  Nothing in Louisiana law supports the contention that any of these elements of damage are those for

which a possessor such as Plaintiff can recover.  Plaintiff never
owned the property and as an adverse possessor its rights are
strictly governed by the Civil Code.  Lost rental income is a
fruit but a bad faith possessor is not entitled to fruits.  La.
Civ. Code art. 486.[16]  Plaintiff did not possess the property
long enough to acquire ownership and Plaintiff was not even close
to attaining ownership when the City demolished the property
because it still lacked six years of possession.[17]  Plaintiff had
already been ousted from the property via a state court TRO,
albeit temporarily, and had been admonished by the state court
judge not to continue to "run up" expenses on the property.
Thus, Plaintiff's long term ability to maintain possession was
already in question so the prospect that Plaintiff could have
transferred its possessory rights for any value is highly
speculative.[18]

---

[16] Plaintiff learned of the defect in its title no later than
March 21, 2007, at which time it became a bad faith possessor.  La.
Civ. Code art. 487.  Thus, after that point in time Plaintiff would
have had no claim to lost rents.  No one has suggested that the
property was ever producing rents during any of the pertinent time
frames.

[17] The earliest that ownership of an immovable can be acquired
via acquisitive prescription is ten years.  La. Civ. Code art.
3473.  Assuming that Plaintiff was in good faith when it began to
possess in 2004, the year 2014 is the earliest that Plaintiff could
have owned the property.  For purposes of acquisitive prescription
it is sufficient that possession commences in good faith--
subsequent bad faith does not prevent the accrual of ten year
prescription.  La. Civ. Code art. 3482.

[18] Civil Code articles 3441 and 3442 allow for transfer and
tacking of possession.

Plaintiff argues that as a possessor it was entitled to the presumption of ownership and therefore must be treated as the owner for the purposes of allowing all of the elements of damages that Plaintiff seeks.  Plaintiff contends that <u>Peloquin v. Calcasieu Parish Police Jury</u>, supports its contention that as a possessor it is entitled to the same elements of damages usually reserved to an owner.  367 So. 2d 1246 (La. App. 3d Cir. 1979).

To the contrary, the presumption of ownership applies *provisionally* until the rights of the true owner are established. La. Civ. Code art. 3423.  Ownership with respect to the 2237 property has <u>never</u> been in dispute, and to the extent that it vested conditionally at times in various tax sales purchasers--Plaintiff was not in that number.  The <u>Peloquin</u> case, upon which Plaintiff relies, involved a cat in the possession of the plaintiffs for seven years and whose true owner was not only unknown, but would likely never be known.  In this case, ownership of the 2237 property has never been in question.

Plaintiff simply does not have standing under Louisiana law to recover the elements of damages that it seeks from the City in this lawsuit.  Moreover, the value of Plaintiff's possessory rights is questionable under the circumstances.  The Court recognizes of course that Plaintiff had a personal action against the owner to be compensated for necessary expenses incurred for the preservation of the property, La. Civ. Code art. 527, and that Louisiana law might have entitled Plaintiff to retain

20

possession until reimbursed for the expenses and improvements that the law would allow, La. Civ. Code art. 529.  While the demolition of the improvements did not deprive Plaintiff of its personal action against the owner, it did diminish the value of the right of retention that might have applied via article 529 with respect to the improvements on the land so Plaintiff cannot be said to have no injury whatsoever.  But again, the value of that injury is highly speculative.  Simply, Plaintiff cannot obtain damages premised on the assumption that it would have been able to retain adverse possession of the property for another six years until it owned it outright.[19]

Second, and perhaps most importantly, the Court is persuaded that any injury sustained by Plaintiff was not causally-related to the City's failure to provide Plaintiff with notice of the demolition.  The record is clear that Plaintiff had been concerned for some time that the City might demolish the property.  In late 2007, Plaintiff had actual knowledge that the City might take action to demolish the 2237 property and that the property was listed on the City's "imminent danger" list.  Rather

---

[19] The family had already twice redeemed the 2237 property and its 2231-33 property following tax sales so it might very well have simply reimbursed Plaintiff its necessary expenses.  Morever, the owner had already prevailed against Plaintiff in other litigation where the state court concluded that Plaintiff was demanding payment of items to which it was not legally entitled.  See note 1 supra.  The Court is not aware if the state court has recognized Plaintiff's right to reimbursement of the $20,000 that it spent.

than seek injunctive relief to protect its rights, Plaintiff
instead chose to work informally with individual employees of the
City Attorney's Office.  On June 11, 2008, the day before the
demolition, Plaintiff's counsel learned directly from an employee
of the City Attorney's Office that the City wanted to demolish
the property.  Again, Plaintiff did not seek injunctive relief in
state court, but instead tried to negotiate with the City's
employees.  There is no question that Plaintiff knew that
demolition was a real threat because Plaintiff sent its own
engineer's report to City employees in an effort to protect the
property—this notwithstanding that the property was on the
City's "Do Not Demolish List."  Again, the appropriate course of
action given what Plaintiff knew was to seek a TRO in state court
to prevent the City from demolishing the property.  With an
injunctive order in place, if the City had nonetheless demolished
the property then Plaintiff could very well have been entitled to
the damages it now seeks for the City's violation of the TRO.
But having failed to take appropriate action, notwithstanding
clear knowledge that the property was in danger, Plaintiff cannot
now claim that its damages are due to the City's lack of notice
regarding the demolition.  To the extent that Plaintiff has
suffered damages to its possessory rights those damages are not
causally related to the City's lack of notice.

    In sum, the Court is persuaded that the City is entitled to

judgment as a matter of law on Plaintiff's federal due process claim.

### B.   *Takings/Inverse Condemnation Claim*

The City argues that SBS's takings claim is not ripe for review.  The City contends that Plaintiff has not been denied just compensation through state court procedures.

A violation of the Takings Clause does not occur until just compensation has been denied through available state court procedures.  John Corp. v. City of Houston, 214 F.3d 573, 581 (5th Cir. 2000) (citing Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194 n.13 (1985)).  The plaintiff must use available state court procedures to seek such compensation before bringing a § 1983 takings claim to federal court.  Id.  The Court finds Plaintiff's contention that such an effort would be futile because the City does not honor its state court obligations to be insufficient as a matter of law to avoid the ripeness bar.  The City's motion for summary judgment is therefore GRANTED as to the inverse condemnation/taking's claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 51)** filed by defendant the City of New Orleans is **GRANTED**. Plaintiff's due process claims are **DISMISSED** with prejudice.  The inverse condemnation/takings claims are **DISMISSED** without

prejudice;[20]

    **IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment Re: Liability and Undisputed Damages (Rec. Doc. 62)** filed by plaintiff Side by Side Redevelopment, Inc. is **DENIED**;

    **IT IS FURTHER ORDERED** that the pending **Motion in Limine (Rec. Doc. 59) is DENIED** as moot.

    October 4, 2010

                                     JAY C. ZAINEY
                        UNITED STATES DISTRICT JUDGE

---

[20] The complaint states that the action also arises under the laws of the state of Louisiana but it has never been clear to the Court exactly which state laws Plaintiff intended to invoke.  The complaint makes reference only to federal law.

24